Filed 8/24/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ED H. et al., | D070346 |
| Appellants, | |
| v. | (Super. Ct. No. ED91396) |
| ASHLEY C., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Robert O. Amador, Judge.  Affirmed.

Law Office of Patrick McCrary and Patrick L. McCrary for Appellants.

Bruce W. Cozart for Respondent.

Ed and Yvonne H., paternal great-grandparents, appeal from an order denying their request for joinder and petition to seek visitation with their great-grandchildren.  Ed and Yvonne's primary contention on appeal is that the court erred in finding they lacked standing to join as parties seeking visitation.  Specifically, they argue the court erred by determining that Family Code[1] sections 3103 and 3104, which allow a court to grant

---

[1]     Further statutory references are to the Family Code.

visitation rights to grandparents if certain conditions are met, do not permit great-grandparent visitation. Alternatively, Ed and Yvonne contend the court erred by not considering that their grandson, the father of the great-grandchildren, consented to and joined in their request for visitation, and by not considering whether they had standing as psychological or de facto parents. We conclude that the Legislature did not intend section 3104 of the grandparent visitation statutes to authorize great-grandparents to petition for visitation, and thus the court did not err by concluding Ed and Yvonne lacked legal standing to seek visitation. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Ashley C. and Zachary H., whose marriage was dissolved in 2014, have two children together: H.H. and J.H. (together, the great-grandchildren). Ashley and H.H. lived with Ed and Yvonne for approximately three years, from about August 2009 to July 2013. Once J.H. was born in 2010, he also lived with Ed and Yvonne until July 2013. During this time, Ed and Yvonne helped care for the great-grandchildren. After Ashley and the great-grandchildren moved out of Ed and Yvonne's house, Ed and Yvonne would periodically visit them.

In September 2013, Ashley petitioned for dissolution of her and Zachary's marriage, and their marital status was terminated in March 2014. The dissolution judgment awarded Ashley sole legal and physical custody of the great-grandchildren and awarded Zachary reasonable visitation.

In March 2015, Ashley requested domestic violence restraining orders against Zachary in response to an incident where Zachary threatened her. Later that month, the

2

court awarded Ashley a restraining order against Zachary including a child custody and visitation order granting Ashley legal and physical custody of the great-grandchildren and terminating Zachary's visitation. Ed and Yvonne's visits with the great-grandchildren ended about this time.

In December 2015, Ed and Yvonne filed a request for an order modifying visitation and a petition for independent great-grandparent visitation pursuant to sections 3100, 3102, 3103, and 3104. They asserted that despite numerous attempts to contact Ashley, she had ignored their calls and messages, and that as a consequence, they had not contacted their great-grandchildren since March 2015. Ed and Yvonne argued that because of their long-standing and substantial relationship with the great-grandchildren, visitation and continued family contact was in the great-grandchildren's best interest. Zachary consented to and joined in Ed and Yvonne's visitation petition. At the same time, Ed and Yvonne obtained an order shortening time to seek mandatory joinder as indispensable parties.

Ashley opposed the motion and the request for joinder. She argued her ongoing contact with Ed and Yvonne was hindered once Zachary moved into Ed and Yvonne's home because of the restraining order against Zachary. However, she asserted she had not deterred Ed and Yvonne from contacting the great-grandchildren, and except for one instance, they had not attempted to visit them since April 2015. She argued that an order joining Ed and Yvonne would be detrimental to the great-grandchildren's welfare because they associate Ed and Yvonne with Zachary, who terrifies them, and therefore visitation may cause the great-grandchildren fear and anxiety. She asserted that Ed and Yvonne

3

minimized Zachary's drug and behavioral problems, and thus she could not trust them to protect the great-grandchildren from him. Ashley also asserted that Ed and Yvonne lacked standing to be joined because they were not grandparents, and the court had no subject matter jurisdiction to entertain their request.

In reply, Ed and Yvonne argued they had standing to seek visitation under California law providing for nonparent visitation. They additionally contended the court had discretion under section 3100 to grant visitation to nonparents who have an interest in the child's welfare; they had standing to seek visitation under California Rules of Court, rule 5.24(c)(1),(2) and (e)(1)(A),(B) given Zachary's consent to their visitation request; and they could seek visitation as de facto parents.

In March 2016, the court heard Ed and Yvonne's requests for joinder and visitation. During the hearing, the court observed that "[j]oinder is statutory" and while it had exhaustively reviewed case authority, it found no authority for joinder of great-grandparents. The court further noted that although there are grandparent, stepparent, and sibling joinders, "[t]here are not, by statute, great-grandparent joinders, and once an objection is lodged, the court cannot join because there is no statutory right to join." After hearing argument, the court denied Ed and Yvonne's joinder motion: "The court finds that this is a statutory scheme, and the great-grandparents do not have standing and will not be joined." Its written order provides: "The Court summarily denies the request of proposed Claimants, Ed and Yvonne [H.], to join as parties to this case for grandparent visitation based upon lack of subject matter jurisdiction because of lack of standing by the great-grandparents."

4

This appeal followed.

DISCUSSION

I. *Standards of Review*

We generally review custody and visitation orders for abuse of discretion. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) "Under this test, we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Diaz*, at p. 255.) Generally, reversal is only warranted "if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610; *Burgess*, at p. 32.) " ' "Broad deference must be shown to the trial judge. The reviewing court should interfere only ' "if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." . . . ' " ' " (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1182.)

However, "[m]atters presenting pure questions of law, not involving resolution of disputed facts, are subject to the appellate court's independent review." (*Suarez v. City of Corona* (2014) 229 Cal.App.4th 325, 332.) Questions of statutory interpretation are also reviewed under an independent standard of review. (*In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1058.)

II. *The Court Properly Ruled Ed and Yvonne Lack Standing to Seek Visitation*

Ed and Yvonne contend the court erred when it summarily ruled they lacked standing to seek visitation. They argue the court did not analyze or consider the common

meaning, origin, or legislative intent regarding the term "grandparent," which is undefined in the Family Code or other codes. According to Ed and Yvonne, common dictionary usage demonstrates that a great-grandparent is equivalent to a grandparent: the word "great" in "great-grandparent" is merely an adjective describing a type of grandparent, and thus great-grandparents encompass grandparents. As they see it, they are "are relationally considered 'grandparents' " or are grandparents "for all practical matters." Ed and Yvonne contend that if the Legislature intended to take great-grandparents out of the visitation statutes it could have done so by language that eliminated great-grandparents, or it would have placed such a limitation somewhere in the Family Code. Finally, Ed and Yvonne argue the court should have given greater consideration to the fact that they are the only "grandparents" in the great-grandchildren's lives.

These arguments present a question of statutory interpretation, the primary task of which is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*926 North Ardmore Avenue, LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328; *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040; *Acqua Vista Homeowners Association v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1140.) To determine Legislative intent, we look first to the language of the statute, adopting its usual and ordinary meaning. (*People v. Toney* (2004) 32 Cal.4th 228, 232; *In re Lana S.* (2012) 207 Cal.App.4th 94, 108.) "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818; *Acqua Vista*, at p. 1140 [where statutory language is unambiguous,

6

" ' "we presume the Legislature meant what it said, and the plain meaning . . . governs" ' "].)  Thus, when a statute is clear and unambiguous, we may not "insert or delete words to accomplish a purpose that does not appear on its face or from its legislative history."  (*Organization of Deputy Sheriffs v. County of San Mateo* (1975) 48 Cal.App.3d 331, 340; *Acqua Vista*, at p. 1145 [declining to adopt an interpretation that requires insertion of words into a statute under the guise of interpretation].)  "We consider extrinsic aids, such as legislative history, only if the statutory language is reasonably subject to multiple interpretations."  (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888.)  Finally, we must construe the statute in context " 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' "  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13.)

A.  *The Grandparent Visitation Statutes*

The California Supreme Court reviewed the grandparent visitation statutes in *In re Marriage of Harris* (2004) 34 Cal.4th 210 (*Harris*):  "Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory.  [Citation.]  Three California statutes expressly address grandparent visitation:  [S]ection 3102, which permits visitation by a deceased parent's children, siblings, parents, and grandparents if such visitation would be in the best interests of the child; section 3103, which permits a court in specified proceedings involving the custody of a child to grant grandparent visitation; and section 3104, which permits grandparents to petition for visitation if the grandchild's parents are not married or if certain other conditions are met."  (*Id.* at p. 219, fns. omitted; see also *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 777; *In re Luke H.*

7

(2013) 221 Cal.App.4th 1082, 1091.) "In addition, section 3100 provides that in making an order for joint custody of a minor child, '[i]n the discretion of the court, reasonable visitation rights may be granted to any other person having in interest in the welfare of the child.' (§ 3100, subd. (a).)" (*Harris*, at p. 220, fn. 5.)

Ed and Yvonne concede they do not have standing to join as parties seeking visitation under section 3102, the first statute mentioned in *Harris*, *supra*, 34 Cal.4th 210, because the great-grandchildren's parents are alive. Section 3102 provides in part: "If either parent of an unemancipated minor child is deceased, the children, siblings, parents, and grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child." (§ 3102, subd. (a).)

Rather, Ed and Yvonne suggest that sections 3103 and 3104 grant them standing to seek visitation. Section 3103 authorizes the court "in a proceeding described in Section 3021" to grant visitation to grandparents. Subdivision (a) of that statute provides: "Notwithstanding any other provision of law, in a proceeding described in Section 3021, the court may grant reasonable visitation to a grandparent of a minor child of a party to the proceeding if the court determines that visitation by the grandparent is in the best interest of the child."

Section 3104 provides in part: "(a) On petition to the court by a grandparent of a minor child, the court may grant reasonable visitation rights to the grandparent if the court does both of the following: [¶] (1) Finds that there is a preexisting relationship between the grandparent and the grandchild that has engendered a bond such that

8

visitation is in the best interest of the child. [¶] (2) Balances the interest of the child in having visitation with the grandparent against the right of the parents to exercise their parental authority." A petition under this statute "shall not be filed while the natural or adoptive parents are married" with certain exceptions (§ 3104, subd. (b); see *Stuard v. Stuard*, *supra*, 244 Cal.App.4th at p. 778), and section 3104 applies a rebuttable presumption that grandparent visitation is not in the best interest of a minor child under other circumstances, including where one parent with sole legal and physical custody objects to such visitation. (§ 3104, subd. (f).) Unlike section 3103, which provides for grandparent visitation during the pendency of marriage dissolution proceedings, section 3104 permits grandparent visitation under certain conditions after the court has entered a judgment dissolving the marriage and awarding child custody. (*Harris*, *supra*, 34 Cal.4th at p. 222.)

In *Harris*, a majority of the California Supreme Court decided which of these two statutes, section 3103 or 3104, applied in circumstances where a court had granted extensive visitation rights to paternal grandparents over the objection of the child's mother, who had obtained a judgment of dissolution and an order granting her sole custody years earlier. (*Harris*, *supra*, 34 Cal.4th at pp. 214, 220.) It concluded section 3104 governed because the Legislature intended section 3103 to govern grandparent visitation only until entry of judgment dissolving the marriage and awarding custody of the child. (*Id.* at p. 222.) The court reasoned "both statutes contain a rebuttable presumption against grandparent visitation if the parents agree that such visitation should be denied. But only section 3104 also applies a rebuttable presumption against

9

grandparent visitation if the parent granted sole custody of the child objects. We conclude that the Legislature did not include a similar provision in section 3103 because it would not be needed during marriage dissolution proceedings before a judgment awarding custody had been entered. There would be no need to include such a provision in section 3103 if, as we conclude, a request for grandparent visitation is governed by section 3104 once a judgment has been entered dissolving the marriage and awarding sole custody of the child to one parent." (*Id.* at p. 223.) The court went on to uphold the constitutionality of that section under the federal and California Constitutions. (*Id*. at pp. 223-230.)

B. *Section 3103 is Inapplicable to Ed and Yvonne's Request*

Though our task is to decide whether the Legislature's use of the term "grandparent" in the grandparent visitation statutes includes great-grandparents, we may reject at the outset under *Harris* any claim that Ed and Yvonne have standing under section 3103. Because Ed and Yvonne seek visitation rights after the court dissolved Ashley and Zachary's marriage and awarded custody, they would not have standing under section 3103 as explained in *Harris*, even assuming they met the definition of a grandparent in that section. (*Harris*, *supra*, 34 Cal.4th at pp. 210, 222.)

C. *Section 3104 Does Not Grant Visitation Rights to Great-Grandparents*

We turn then to whether the Legislature intended that great-grandparents be included in section 3104's grant of a grandparent's right to seek visitation. Our Supreme Court has not yet ruled on whether great-grandparents fall within the purview of section

10

3104, and we have found no other California appellate decision on the issue. It appears to be an issue of first impression in this state.

In answering this question, our role is "simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.) Section 3104 expressly provides that a "grandparent of a minor child" can petition the court for visitation rights. (§ 3104, subd. (a).) As Ed and Yvonne point out, neither section 3104 nor the Family Code more generally define the term grandparent, so we look to its ordinary dictionary meaning, which is "a parent's parent" (Webster's 3d New Internat. Dict. (2002) p. 988, col. 2) or "a parent of one's father or mother" (Webster's Collegiate Dict. (11th Ed. 2003) p. 544). This plain and ordinary meaning of the term grandparent would not extend to Ed and Yvonne, who are not parents but grandparents of the parent in this case.

Additionally, viewing section 3104 in context with the remaining grandparent visitation statutes makes it abundantly clear the Legislature intended the plain and ordinary meaning of "grandparent"—the parent of the minor child's parent—in section 3104 because it specifically referred to great-grandparents in other provisions of the visitation statutes. That is, section 3102, which as stated addresses the right of specified family members to seek visitation in the event either parent is deceased, permits reasonable visitation by both "parents[ ] and grandparents of the deceased parent,"—i.e.,

11

grandparents and great-grandparents of the minor child. (§ 3102, subd. (a).[2]) This express reference to great-grandparents in section 3102, but not 3104, contradicts Ed and Yvonne's arguments that "the [L]egislature did not differentiate the two terms because [it] did not consider a variance in the two terms" or that "the Family Code does not differentiate the terms . . . as it could if the [L]egislature desired to do so." Ed and Yvonne argue the term "great" in "great-grandparents" is merely an adjective describing a type of grandparent. Following this logic, the Legislature need only have provided for visitation by "parents" in section 3102 because grandparents are merely a type of parent. That the Legislature did not do so in section 3102 is strong evidence that it likewise did not do so in section 3104. We conclude the Legislature plainly limited visitation rights in section 3104 to the parents of the mother or father of the minor child.

---

[2]    We observe that section 3102 further provides: "(b) In granting visitation pursuant to this section to a person other than a *grandparent of the child*, the court shall consider the amount of personal contact between the person and the child before the application for the visitation order. [¶] (c) This section does not apply if the child has been adopted by a person other than a stepparent or *grandparent of the child*. Any visitation rights granted pursuant to this section before the adoption of the child automatically terminate if the child is adopted by a person other than a stepparent or *grandparent of the child*." (Italics added.) In 1994, the Legislature amended subdivisions (b) and (c) of section 3102 specifically to refer to the grandparent "of the child" so as to clarify that those sections did not mean the great-grandparent as referenced in section 3102, subdivision (a). (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3042 (1993-1994 Reg. Sess.) as amended Apr. 4, 1994, p. 1 ["Subdivisions (b) and (c) provide special consideration for visitation with the child, or adoption of the child, by a 'grandparent.' It isn't clear, however, whether this refers to the grandparent of the child or the grandparent of the deceased parent, as is the case in subdivision (a). As current law generally provides greater visitation rights to the grandparents of a child, it appears the intent is to refer to the child's grandparent"].)

Courts in other jurisdictions have strictly construed grandparent-visitation statutes to exclude great-grandparents when not expressly included in the statute.[3] (See, e.g., *Chavers v. Hammac* (Ala.Civ.App. 1990) 568 So.2d 1252, 1253; *In re M.D.E.* (Colo.Ct.App. 2013) 297 P.3d 1058, 1061; *Hammons v. Jenkins-Griffith* (Ind.Ct.App. 2002) 764 N.E.2d 303, 305-306; *Skov v. Wicker* (2001) 272 Kan. 240, 249; *Cole v. Thomas* (Ky.Ct.App. 1987) 735 S.W.2d 333, 334-335; *Lott v. Alexander* (Miss.Ct.App. 2014) 134 So.3d 369, 374; *People ex rel. Antonini v. Tracey L.* (N.Y.App.Div.1996) 230 A.D.2d 869.) In *Cole*, the court affirmed the trial court's denial of the great-grandmother's petition seeking visitation rights with her great-grandchild under a Kentucky statute that allows grandparents reasonable visitation given certain conditions. (*Cole v. Thomas*, 735 S.W.2d at pp. 334-335.) The court found that the statute only provided visitation between a grandparent and grandchild, reasoning that if great-grandparents were included in the statute it "would open the door to aunts and uncles,

---

3  Other jurisdictions expressly provide for great-grandparent visitation in their statutes. (E.g., Ariz. Rev. Stat. § 25-409(C)(3) ["[f]or grandparent or great-grandparent visitation"]; Ark. Code Ann. § 9-13-103(b) ["[a] grandparent or great-grandparent may petition a circuit court of this state for reasonable visitation rights"]; Idaho Code § 32-719 ["[t]he district court may grant reasonable visitation rights to grandparents or great-grandparents"]; Iowa Code § 600C.1(1) ["[t]he grandparent or great-grandparent of a minor child may petition the court for grandchild or great-grandchild visitation"]; N.M. Stat. Ann. §§ 40-9-1.1 to 40-9-4 [defining grandparent to include great-grandparent and providing visitation rights]; N.D. Cent. Code § 14-09-05.1(1) ["[t]he grandparents and great-grandparents of an unmarried minor child may be granted reasonable visitation rights to the child"]; Okla. Stat. Ann. tit. 43, § 109.4(J) ["[f]or the purposes of this section, the term 'grandparent' shall include 'great-grandparent' "]; Wis. Stat. Ann. § 767.43 ["upon petition by a grandparent, great-grandparent, stepparent . . . the court may grant reasonable visitation rights to that person"].)

cousins and great-great-grandparents." (*Id.* at p. 335.) The court emphasized that although "we would not be adverse to allowing those persons 'standing in loco parentis' or 'any person having an interest in the welfare of the child' to file petitions such as this, we do not believe this was the intention of the legislature." (*Ibid.*)

Similarly, in *In re M.D.E.*, the appellate court in Colorado noted that excluding great-grandparents from a state statute allowing grandparent visitation with grandchildren limits the number of people who can interfere with constitutional parental rights. (*In re M.D.E.*, *supra*, 297 P.3d 1058 at p. 1061.) The court reasoned the statute should be strictly construed to exclude great-grandparents because "a child can typically have only four grandparents, but could have eight great-grandparents." (*Ibid.*) Ed and Yvonne acknowledge, "There may be an argument that involving too many grandparents can cause more confusion, consternation for the children[,] and litigation among the parents and grandparents." Although they argue that in situations of dueling family members the statute limits visitation to the best interest of the child, we remain unconvinced that because there are other requirements in section 3104 that limit visitation, great-grandparents should be allowed standing under a statute that plainly excludes them.

Ed and Yvonne urge us to go beyond the plain language of the statute to consider other extrinsic aids. In a cursory argument, they suggest that section 3105 is such an aid to demonstrate that the Legislature places importance on maintaining continued contact between a child and a family member who has acted in a parental role and thus "the [L]egislature did not foreclose even non-related third parties from seeking visitation as 'de facto parents' . . . ." Section 3105 does not assist Ed and Yvonne, because it pertains

14

to visitation rights with a child's former legal guardians, a person "who has served in a significant, *judicially approved* parental role." (§ 3105, subd. (a), italics added.)[4] Furthermore, we consider extrinsic aids such as legislative history only if the statutory language is reasonably subject to multiple interpretations. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 719; see *People v. Traylor* (2009) 46 Cal.4th 1205, 1212 [" 'If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary' "].) Section 3104 is unambiguous and not subject to multiple interpretations.

We acknowledge that aside from Ed and Yvonne, the great-grandchildren do not have other grandparent figures present in their life, but that circumstance is of no import in determining the legislative intent of section 3104. While we agree that continued contact by persons who have familial, close bonds with children can be beneficial and of great value to the children, this court cannot add words to a statute that is plain and unambiguous on its face. Therefore, we conclude that Ed and Yvonne do not have standing to seek visitation as great-grandparents under section 3104.

---

4    Section 3105 provides in part: "(a) The Legislature finds and declares that a parent's fundamental right to provide for the care, custody, companionship, and management of his or her children, while compelling, is not absolute. Children have a fundamental right to maintain healthy, stable relationships with a person who has served in a significant, judicially approved parental role. [¶] (b) The court may grant reasonable visitation rights to a person who previously served as the legal guardian of a child, if visitation is determined to be in the best interest of the minor child."

D. *Joinder Arguments*

Ed and Yvonne contend that the court erred by not giving any weight to the fact that Zachary, who has not had his parental rights terminated, joined in and consented to Ed and Yvonne's request for visitation. They argue that when Zachary joined in their request, joinder was appropriate under California Rules of Court, rule 5.24(c) (entitled "Persons who may seek joinder"), which provides in part: "(1) The petitioner or the respondent may apply to the court for an order joining a person as a party to the case who has or claims custody or physical control of any of the minor children subject to the action, or visitation rights with respect to such children . . . ." They also argue that mandatory joinder independently applies to them under California Rules of Court, rule 5.24(e)(1), which states: "(A) The court must order that a person be joined as a party to the proceeding if the court discovers that person has physical custody or claims custody or visitation rights with respect to any minor child of the marriage, domestic partnership, or to any minor child of the relationship. [¶] (B) Before ordering the joinder of a grandparent of a minor child in the proceeding under Family Code section 3104, the court must take the actions described in section 3104[, subdivision] (a)."

These arguments do not establish an abuse of the court's discretion. The court addressed Ed and Yvonne's joinder arguments at the visitation hearing, ruling their contentions failed because they had no statutory right to join as great-grandparents. The court stated that "although there are ways to join, the only people who have a right to join is based on the statute." It then heard their counsel's arguments on the joinder issue, including his argument that under California Rules of Court, rule 5.24, "the court has to

16

acknowledge the fact that one of the parties—one of the parents in this case has actually consented to the joinder . . . ."  We discern no error in the court's conclusion that Ed and Yvonne must have some statutory basis to seek visitation rights in order to be considered for joinder.  (See *Harris*, *supra*, 34 Cal.4th at p. 219 ["Grandparents' rights to court-ordered visitation with their grandchildren are purely statutory"]; accord, *Scott v. Superior Court* (2009) 171 Cal.App.4th 540, 546 [permissive or mandatory joinder not appropriate where nonparent lacked standing to seek custody under the Family Code].)  Ed and Yvonne have not shown the court abused its discretion by concluding they cannot be independently joined under California Rules of Court, rule 5.24(e)(1)(B) because, as previously discussed, they have no standing to assert visitation rights under section 3104.

Without citing California authority applying section 3100 to nonparents in non-joint-custody proceedings, Ed and Yvonne assert an application by Zachary for them to have visitation would properly be made under section 3100, subdivision (a), providing in part that a court in its discretion may grant "reasonable visitation rights . . . to any other person having an interest in the welfare of the child."[5]  However, as *Harris* observed,

_____

5    Section 3100, subdivision (a) provides:  "*In making an order pursuant to Chapter 4 (commencing with Section 3080*), the court shall grant reasonable visitation rights to a parent unless it is shown that the visitation would be detrimental to the best interest of the child.  In the discretion of the court, reasonable visitation rights may be granted to any other person having an interest in the welfare of the child."  (Italics added.)  Section 3080 provides:  "There is a presumption, affecting the burden of proof, that joint custody is in the best interest of a minor child, subject to Section 3011, where the parents have agreed to joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child."  Under section 3081, "[o]n application of either parent, joint custody may be ordered in the discretion of the court . . . ."  The balance of chapter 4 concerns the court's "reasons for granting or denying the request" (§ 3082), aspects of

17

section 3100 applies only when a joint custody order is involved. (*Harris*, *supra*, 34 Cal.4th at p. 220, fn. 5.) The proceedings here do not involve an order for joint custody or any pending custody issues; Ashley already had been granted sole legal and physical custody of the great-grandchildren.

Moreover, in a plurality decision, the United States Supreme Court in *Troxel v. Granville* (2000) 530 U.S. 57, held that a Washington state statute authorizing visitation rights to "any person" and "at any time," if visitation is in the child's best interest, was unconstitutional because the statute infringed on the fundamental right of parents to make decisions concerning the care, custody and control of their children. (*Id*. at pp. 65-67, 72.) Thereafter, *Harris* concluded that under *Troxel*, section 3104 "does not suffer from the [same] constitutional infirmities" as the Washington statute because the statute is more narrow and "permits only grandparents to seek visitation and only if the parents are not married or are separated or if other specified circumstances exist." (*Harris*, *supra*, 34 Cal.4th at p. 226.) If we were to follow Ed and Yvonne's interpretation of section 3100 as purporting to grant a right of "any other person" to petition for visitation without limitation, it would suffer the same constitutional infirmities as the statute in *Troxel*, and it would render sections 3102, 3103, and 3104, which all provide restrictions on visitation, meaningless. In sum, section 3100 provides no basis for Ed and Yvonne's joinder in the proceedings, or for Ed and Yvonne to assert a right to visitation.

---

custody (legal and physical custody, as well as physical control, home, and caretaker), and modification or termination of joint custody orders.

E. *Standing as De Facto Parents*

Ed and Yvonne argue that even if they lack standing under the Family Code to seek visitation, the court erred by not assessing the nature and extent of their involvement in the children's lives and considering their arguments below that they have standing as psychological or de facto parents. They ask this court to remand the case and direct the court to hold an evidentiary hearing to determine whether they qualify as de facto parents.

The concept of a de facto parent was judicially created to recognize limited rights in custody situations and dependency cases for a person who has been found by the court to have assumed the role of a parent on a day-to-day basis, fulfilling the child's physical and psychological needs for affection and care for a substantial period of time. (*In re B.G.* (1974) 11 Cal.3d 679, 692-693 & fn. 18; *In re Kieshia E.* (1993) 6 Cal.4th 68, 70-71, 75 [recognizing doctrine in cases "when parental custody would be 'detrimental' to a child" under family laws giving next custodial preference to " 'the person or persons in whose home the child has been living in a wholesome and stable environment' "]; *Ericka K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1267 [Family Code section 3041 codified de facto parent doctrine in child custody proceedings]; rule 5.502(10) [defining a de facto parent in the juvenile rules of court as a person who "has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period"].) In circumstances involving custodial litigation in family or juvenile dependency matters, the California Supreme Court reasons that such a person should be

19

permitted to intervene and protect their own interests: their participation promotes the correct disposition "because 'such persons who have experienced close day-to-day contact with the child' are among the custodial alternatives the court must appraise, and their views 'deserve consideration.' " (*Kieshia E.*, at pp. 75-76, 77.) Application of the doctrine "ensure[s] that all legitimate views, evidence, and interests are considered" in such proceedings involving a minor child. (*Id*. at p. 76; see *In re Bryan D.* (2011) 199 Cal.App.4th 127, 146 [status as a de facto parent allows that person to "stay involved in the dependency process and provide information to the court"].) But the doctrine does not disturb "the strong countervailing interests unique to the status of parent," and such an outsider to the parent-child relationship has "[n]o interests of comparable importance . . . ." (*Kieshia E.*, at p. 77.)

Accordingly, de facto parent status becomes inapplicable in situations where a court is not involved in proceedings that require assessment of and input from custodial alternatives. The court in *In re Kieshia E.*, emphasized that "[t]he de facto parenthood doctrine simply recognizes that persons who have provided a child with daily parental concern, affection, and care, over a substantial time may develop legitimate interests and perspectives, and may also present a custodial alternative, which should not be ignored in a juvenile dependency proceeding. *The standing accorded de facto parents has no basis independent of these concerns*." (*In re Kieshia E.*, *supra*, 6 Cal.4th at pp. 77-78, italics added.)

Here, the great-grandchildren's mother Ashley has sole legal and physical custody of the great-grandchildren, and her significant rights as a parent are undisturbed. The

20

proceedings here did not present issues of the great-grandchildren's custody or dependency requiring a consideration of custodial alternatives. This is not a circumstance where the court was to consider whether a parent's custody would be detrimental to the children. (*Kieshia E.*, *supra*, 6 Cal.4th at p. 75.) Independent of such concerns, there is no basis to grant standing on behalf of a nonparent meeting the criteria for a de facto parent. Ed and Yvonne's input—even assuming they meet the standard for de facto parents—is simply not required where the great-grandchildren's custody or placement is not at issue. None of Ed and Yvonne's arguments convince us to extend the de facto parenthood doctrine outside of these contexts. The fundamental case recognizing de facto parenthood, *In re B.G.*, *supra*, 11 Cal.3d 679, on which they rely, recognized foster parents' standing to appear in juvenile court proceedings, not grandparent visitation rights outside of dependency proceedings. (*Id.* at p. 693.) We decline to consider out-of-state decisions (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490), and the California authorities Ed and Yvonne cite (*In re Ashley P.* (1998) 62 Cal.App.4th 23; *In re Vincent C.* (1997) 53 Cal.App.4th 1347, 1358; *Christina K. v. Superior Court* (1986) 184 Cal.App.3d 1463) recognize de facto parent standing in a different, juvenile dependency, context.[6]

---

[6] We note that in *In re Robin N.* (1992) 7 Cal.App.4th 1140, the Court of Appeal affirmed a juvenile court's order granting continuing visitation rights to a de facto parent after it had dismissed dependency proceedings. (*Id.* at pp. 1141, 1143.) The juvenile court's order was authorized under California Rules of Court permitting standing by *present or past custodians* qualifying as de facto parents at hearings "at which the status of the dependent child is at issue" and by Welfare and Institutions Code section 362.4, permitting the juvenile court to issue orders for visitation after it terminates its

Here, the court heard and considered Ed and Yvonne's counsel's arguments claiming de facto parent status before making its order. Given the limited application of the doctrine as set forth above, Ed and Yvonne cannot demonstrate the court's ruling, which implicitly rejected their claim of de facto parent standing, was an abuse of discretion.

Finally, even assuming Ed and Yvonne could establish the sort of contact and involvement to be considered de facto parents and the doctrine applied in these circumstances, they cannot show that status alone would confer standing on them to seek visitation with the great-grandchildren. The California Supreme Court and lower courts recognize that de facto parents have only limited procedural rights, such as the right to an attorney, the right to be present at hearings and the right to present evidence and be heard. (*In re Kieshia E.*, *supra*, 6 Cal.4th at p. 77, fn. 7; *In re A.F.* (2014) 227 Cal.App.4th 692, 700; *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361.) They expressly *do not* have the same rights as parents or legal guardians. (*Kieshia E.*, at p. 77 [emphasizing that in *In re B.G.*, *supra*, 11 Cal.3d 693, fn. 21 it "expressly declined to hold that nonparents who assume a parental role thereby become 'parents' or 'guardians,' with all the rights such a status implies"].) Specifically, a de facto parent has no right to reunification services, custody or visitation, or " 'to any degree of independent control over the child's destiny whatsoever.' " (*In re A.F.*, at p. 700, quoting *Kieshia E.*, at p. 82; *In re P.L.*, at p. 1361.) Ed and Yvonne were not prejudiced by the court's ruling declining to consider the nature

jurisdiction over a minor adjudged a dependent child. *Robin N.* does not compel us to extend the de facto parent doctrine outside of custody or dependency contexts.

22

and extent of their involvement in the great-grandchildren's lives, as any finding of de facto parent status does not grant them standing to assert a right to visitation.

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DATO, J.