Filed 2/9/24  Rodriguez v. Rodriguez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VICKY RODRIGUEZ et al., | F086277 |
| Respondents, | |
| v. | (Kern Super. Ct. No. BFL-22-002210) |
| ROSEANNA RODRIGUEZ, | |
| Appellant. | **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Donald B. Griffith, Commissioner.

Roseanna Rodriguez, in pro. per., for Appellant.

Braun Gosling and Sam Van Eerden for Respondents.

-ooOoo-

This is a family law matter involving a visitation order that granted visitation rights to great-grandparents over the objection of the child's mother.  Pro. per. appellant Roseanna Rodriguez (Appellant) appeals the trial court's denial of a "Request for Order" in which she requested clarification of, and amendment to, the operative visitation order. Appellant contends that:  (1) the family court erroneously failed to recognize that respondents do not have statutory standing to seek visitation; and (2) the visitation order violates the Fourteenth Amendment of the United States Constitution.  We affirm.

# BACKGROUND

Appellant was married to Anthony Rodriguez. Respondents Vicky Rodriguez and Daniel Rodriguez, Sr. (Respondents) were Anthony's grandparents. In December 2019, Appellant and Anthony had a daughter, A.R. In March 2020, Anthony died. Following the death of Anthony, Appellant and A.R. lived with Respondents between 18 and 24 months. Appellant and A.R. currently live on their own.

On April 29, 2022, Respondents filed a petition for visitation in order to obtain visitation rights to A.R. In the petition, Respondents identified themselves as paternal great-grandparents of A.R. and indicated that they sought visitation through Family Code section 3102 because A.R.'s father was deceased. Respondents described their preexisting relationship with A.R. as involving a mutual bond because they were A.R.'s primary caregivers for two years while A.R. lived with them. Respondents explained that visitation would be in A.R.'s best interest because: A.R. is confused and traumatized by being denied contact with the only family she has ever known, A.R. calls out Respondents' names and asks to come to their house, and Appellant uses A.R. as leverage to make irrational demands. Respondents explained that they were seeking visitation because Appellant could not be trusted to adhere to cooperative visitation agreements in the absence of a court order. Respondents sought visitation every other weekend, holiday, and birthday, but stated adjustments could be made.

On May 26, 2022, Appellant and Respondents were ordered to appear at a mediation conference. Appellant and Respondents were able to reach an agreement for visitation through the mediation process.

On June 30, 2022, the family court adopted the mediation agreement with minor modification as a formal order of the court. The court ordered as follows: (1) A.R. to reside with mother/Appellant and visit paternal great-grandparents/Respondents every 2nd and 4th weekend of each month, beginning Friday at 6:00 p.m. and ending Sunday at 6:00 p.m.; (2) changes to Respondents' weekend visitation to be mutually made, agreed,

and documented in writing; (3) additional visitation between Respondents and A.R. to be mutually arranged and agreed; (4) Respondents to inform Appellant of any travel plans involving A.R.; (5) Appellant and Respondents to attend family therapy together in order to improve communication between them; and (6) Appellant to have A.R. from 9:00 a.m. to 6:00 p.m. on Mother's Day.

On December 16, 2022, Appellant filed a "Request for Order – Change," in which she sought to terminate the Respondents' visitation rights. In essence, Appellant sought termination for: (1) failure to attend court ordered therapy sessions; (2) saying critical or derogatory things about Appellant, including in A.R.'s presence; (3) engaging in abusive behavior towards Appellant; (4) not having A.R.'s best interest at heart; and (5) lack of standing to seek visitation because Respondents are actually step great-grandparents who have no biological relation to A.R.

On January 5, 2023, Respondents filed an opposition to Appellant's request to terminate their visitation rights. In their opposition, Respondents addressed and denied Appellant's allegations against them, including the allegation that they were "step-great-grandparents."

On January 19, 2023, the family court held a hearing on Appellant's request to terminate visitation. An entry on the "Register of Actions" indicates that Appellant and Respondents were sworn and gave evidence at the hearing. The court denied Appellant's motion at the conclusion of the hearing but issued a visitation order that contained additional terms to the June 30, 2022 order. In relevant part, the court ordered: (1) Respondents have visitation on the 2nd and 4th weekend of the month from Friday at 6:00 p.m. to Sunday at 6:00 p.m., (2) Respondents and any third parties are to remain in the car during drop off and the parties are not to communicate during drop offs, (3) additional visitation to take place as mutually arranged and agreed, (4) Appellant can cancel a visitation if A.R. is ill, (5) Respondents may not block Appellant's cell phone or access to A.R. during visitation, (6) Appellant is to have A.R. on holidays,

3.

(7) Respondents are restrained from making derogatory remarks about Appellant in A.R.'s presence, and (8) the parties are to attend therapy every 60 days with a therapist of Appellant's choosing. Appellant was ordered to prepare the findings and order after hearing.

On March 20, 2023, a written order following the January 2023 hearing was filed.

On March 23, 2023, Appellant filed a second "Request for Order – Change," in which she sought to clarify and amend Respondents' visitation rights. Appellant indicated that clarifications regarding birthdays and other important events (e.g., anniversaries, funerals, sporting events, etc.) were necessary in order to give her more flexibility and authority over visitations and to avoid conflict with Respondents. Appellant also expressed concern that Respondents permitted Daniel Rodriguez, Jr. (A.R.'s grandfather) to be around A.R. during visits because of his aggressive behavior towards Appellant. Appellant also alleged that Respondent Daniel Rodriguez, Sr. called her a liar and that Respondent Vicky Rodriguez sought to have the therapist file a CPS complaint against her. Appellant did not seek to terminate visitations in this request.

On May 3, 2023, Respondents filed an opposition to Appellant's request for clarification and amendment. Respondents denied the allegations made by Appellant and requested the family court maintain the January 2023 order.

On May 17, 2023, the family court held a hearing on Appellant's request for clarification and amendment. The Register of Actions indicates that Appellant and Respondents were sworn.[1] The court denied Appellant's request and ordered that the "orders made on 01/19/23 remain in full force and effect." The court also denied Appellant's request to prohibit third parties and extended relatives to be present during visitation. However, the court clarified holiday, travel, and birthday visitation issues by

---

[1] Unlike the January 19, 2023 notation, the May 17, 2023 notation does not state that the parties gave evidence. Nevertheless, the fact that the parties were sworn strongly suggests that they also gave evidence, despite the absence of a notation.

4.

requiring Respondents to notify Appellant about travel with overnight stays, requiring reasonable accommodations to make up a visitation if a visitation falls on a holiday, and requiring that any birthday that falls on a weekend be celebrated with Respondents. The court also clarified that Appellant has the right to keep A.R. if Respondents' schedule did not permit a visitation.

On May 18, 2023, Appellant filed a notice of appeal. The notice states that it is appealing a judgement or order entered on May 17, 2023. In a section on the preprinted notice that describes the type of appeal, the "other" box is checked and the following description is written: "Judgment for Request for Order to review and clarify the existing order on the current visitation rights. The [Appellant] pointed out that the Petitioners are the step great-grandparents and don't have legal grounds to petition." In the designation of record, Appellant also identified the judgment or order of May 17, 2023, as the judgment or order appealed.

## DISCUSSION

### I. Basis for Appeal

#### A. *Parties' Arguments*

Appellant argues that she is appealing the "final judgment" of May 17, 2023, and that her appeal is proper through Code of Civil Procedure section 904.1, subdivision (a)(1). Respondents argue that the May 17, 2023 order is an appealable order following a final judgment and that the appeal is properly brought through Code of Civil Procedure section 904.1, subdivision (a)(2). Respondents are correct.

#### B. *Legal Standard*

In California, "[i]t is settled that the right to appeal is strictly statutory, and a judgment or order is not appealable unless made so by statute." (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377; see *Guttman v. Guttman* (2021) 72 Cal.App.5th 396, 405.) By statute, an appeal may be taken from, among other things,

a final noninterlocutory judgment, (see Code Civ. Proc., § 904.1, subd. (a)(1)), or an order made after a final noninterlocutory judgment.  (See *id*., subd. (a)(2).)

### 1.    Code of Civil Procedure Section 904.1, Subdivision (a)(1)

With respect to Code of Civil Procedure section 904.1, subdivision (a)(1), " '[a] judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." ' " (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304.)  It is the substance of a decree, not its form, that determines whether it is final and appealable. (*Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1115; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.)  The test, which must be adapted to the circumstances of each case, is whether there are any issues left for further determination or consideration except for the issues of compliance or noncompliance.  (*Dhillon*, at p. 1115; *Griset*, at p. 698.)

### 2.    Code of Civil Procedure Section 904.1, Subdivision (a)(2)

With respect to Code of Civil Procedure section 904.1, subdivision (a)(2), "not every postjudgment order that follows a final appealable judgment is appealable." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*); *In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 78 (*Marriage of Deal*).)  To be appealable, a postjudgment order must follow a final judgment and satisfy two additional requirements: (1) the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment; and (2) the order must either affect the judgment or relate to it by enforcing it or staying its execution.  (See *Lakin*, at pp. 651–652; *Marriage of Deal*, at p. 78.)

### 3.    Code of Civil Procedure Section 906

California law does not permit an appellate court "to review any decision or order from which an appeal might have been taken." (Code Civ. Proc., § 906.)  That is, "an appellate court may not review a decision or order from which an appeal could previously

have been taken." (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1347 (*Rifkin*); see *Dakota Payphone, LLC v. Alvarez* (2011) 192 Cal.App.4th 493, 509 (*Dakota Payphone*); *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 (*Sole Energy*).) " 'The taking of an appeal is … jurisdictional, and where no appeal is taken from an appealable order, a reviewing court has no discretion to review its merits.' " (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1247 (*Maughan*).) Therefore, " ' " '[i]f a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate relief.' " ' " (*Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67 (*Reyes*).)

### C.   *Analysis*

Appellant's notice of appeal and opening brief expressly state that she is appealing the May 17, 2023 order ("May 2023 order"). The parties dispute how this order is appealable, either as a final judgment or as an appealable postjudgment order. The nature of the May 2023 order is significant because it affects what issues Appellant can raise in this appeal. (Code Civ. Proc., § 906; *Reyes*, *supra*, 55 Cal.App.5th at p. 67; *Rifkin*, *supra*, 234 Cal.App.4th at p. 1347; *Sole Energy*, *supra*, 127 Cal.App.4th at p. 239.) In order to determine how the May 2023 order is appealable, it is necessary to consider three orders: the June 30, 2022 order ("June 2022 order"), the January 19, 2023 order ("January 2023 order"),[2] and the May 2023 order itself.

---

[2] The Register of Actions shows that a written order was filed on March 20, 2023, that memorialized the family court's oral order of January 19, 2023. Because minutes for the May 17, 2023 hearing and the Register of Actions entry for the May 17, 2023 hearing both show that the family court held the "orders made on 1/19/2023 remain in full force and effect," we will refer to the operative order made at the conclusion of the January 19, 2023 hearing as the "January 2023 order."

### 1. June 2022 Order

The June 2022 order adopted an agreement for visitation that was reached between the parties through a judicially ordered mediation. The June 2022 order granted Respondents visitation rights and set the general parameters for visitations. Because Respondents initiated the proceedings for the sole purpose of obtaining visitation, the June 2022 order resolved all factual issues between the parties in relation to the existing family court proceeding. After entry of the June 2022 order, the only issues that remained pending between the parties were those of compliance and noncompliance with the visitation order. Given the nature of the proceeding in the family court, as well as the substance of the order itself, the June 2022 order meets the criteria for being a final judgment. (*Dhillon v. John Muir Health*, *supra*, 2 Cal.5th at p. 1115; *Griset v. Fair Political Practices Com.*, *supra*, 25 Cal.4th at p. 698.) Therefore, we conclude that the June 2022 order is a final judgment under Code of Civil Procedure section 904.1, subdivision (a)(1).

### 2. January 2023 Order

The January 2023 order was made at the conclusion of a contested hearing and denied Appellant's request to terminate visitation. The January 2023 order kept the material aspects of the June 2022 order intact but also made material additions with respect to holiday visitations and the parties' conduct towards each other, particularly during drop offs and during interactions with A.R. The issues raised in Appellant's motion to terminate appear outside the scope of the proceedings that led to the June 2022 order, and by adding additional material terms, the January 2023 order clearly affected the June 2022 order. Given these considerations, the January 2023 order meets the requirements to be a postjudgment appealable order. (*Lakin*, *supra*, 6 Cal.4th at p. 651; *Marriage of Deal*, *supra*, 80 Cal.App.5th at p. 78.) Therefore, we conclude that the January 2023 order is an appealable postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2).

8.

### 3. May 2023 Order

The May 2023 order was entered after a contested hearing in which Appellant's written motion requested clarification and amendment (but not termination) of the January 2023 order. The family court resolved Appellant's motion by providing some clarification, denying the lion's share of the motion, and affirming that the January 2023 order remained in full force and effect. That is, the court affirmed that the visitation rights would continue to be governed by the January 2023 order without substantial change and found that only some clarification was appropriate. Based on Appellant's written motion of March 23, 2023, the May 2023 order resolved issues that were different (though similar) from those raised in connection with the January 2023 order and affected the January 2023 order by providing clarification and denying amendment. Given these considerations, the May 2023 order meets the requirements to be a postjudgment appealable order. (*Lakin*, *supra*, 6 Cal.4th at p. 651; *Marriage of Deal*, *supra*, 80 Cal.App.5th at p. 78.) Thus, we conclude that the May 2023 order is an appealable postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2).

## II. Statutory Standing and Fourteenth Amendment Rights

### A. *Parties' Arguments*

Appellant argues that the visitation order should be vacated. With respect to statutory standing, Appellant argues that a DNA test from Anthony demonstrates that he is not biologically related to Respondents and thus, Respondents are not A.R.'s "great-grandparents" under Family Code section 3102. At the hearing, the family court erroneously held that it did not matter that Respondents were merely "step-great-grandparents." With respect to the Fourteenth Amendment, Appellant argues that she is a fit parent and that her judgment regarding what is best for A.R. is constitutionally presumed correct and entitled to substantial weight. Because the court did not properly apply this presumption, and instead relied on an inaccurate finding that she is "bad with relationships," Appellant avers that the court's order is unconstitutional.

9.

Respondents argue among other things that Appellant has forfeited any error because she could have appealed her issues in connection with a prior order or judgment. Respondents also argue that Appellant failed to provide a reporter's record, which requires the reviewing court to presume that substantial evidence supports the family court's order. Appellant's unsupported assertions about what happened at the hearing do not overcome this presumption.

Respondents are correct.

## C. *Legal Standards*

### 1. Family Code section 3102

Under section 3102 of the Family Code, "[i]f either parent of an unemancipated minor child is deceased, the … grandparents of the deceased parent may be granted reasonable visitation with the child during the child's minority upon a finding that the visitation would be in the best interest of the minor child." (Fam. Code, § 3102, subd. (a).) By identifying the grandparents of a deceased parent, section 3102 provides the mechanism for great-grandparents of a child to seek and obtain visitation rights. (*Ed H. v. Ashley C.* (2017) 14 Cal.App.5th 899, 908–909.)

### 2. Fourteenth Amendment

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, parents have the fundamental right to make decisions concerning the care, custody, and control of their children, which entails the right to determine who has the right to associate with the child. (See *Troxel v. Granville* (2000) 530 U.S. 57, 65; *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1448.) There is a presumption through this fundamental right that a fit parent will act in the best interest of his or her child. (*Troxel*, at p. 69; *Metzger*, at p. 1448.) In order to comply with the Fourteenth Amendment, courts have construed Family Code section 3102 as requiring a rebuttable presumption in favor of a fit surviving parent's decision that visitation would not be in the child's best interest. (*Rich v. Thatcher* (2011) 200 Cal.App.4th 1176, 1180.) To

10.

overcome this presumption, a relative seeking visitation must show by clear and convincing evidence, i.e., evidence that is so clear as to leave no substantial doubt, that the denial of visitation would be detrimental to the child.  (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 302; *Rich*, at pp. 1180–1181.)  If the relative overcomes the presumption, visitation orders that are against the wishes of the parent may be imposed.  (*Chalmers*, at p. 302.)

### 3. Failure to Provide a Reporter's Record

A party challenging a judgment or order has the burden of showing reversible error by an adequate record.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574; see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).)  "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  "A judgment or order of a lower court is presumed correct on appeal, and all intendments and presumptions are indulged in favor or correctness."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*); see also *Jameson*, at p. 609; *Elena S.*, at pp. 574–575.)  This includes presuming that the trial court's findings of fact are supported by substantial evidence.  (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 321 (*Nielsen*).)  As a result, "the absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court."  (*Jameson*, at p. 608.)  In the absence of a reporter's record, there is a presumption of an absence of error that precludes challenges to the sufficiency of evidence.  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 993; see also *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 633, fn. 12; *Elena S.*, at pp. 574–575.)  By operation of this presumption, appellate courts frequently and in a variety of contexts refuse to reach the merits of an appellant's claims in the absence of a court reporter's record or a suitable substitute.  (*Jameson*, at p. 610

[describing cases]; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [same].) However, if an appellant's challenge to a lower court's action does not rely on evidence or testimony presented or findings and statements made at a hearing, a reporter's record may not be necessary for a meaningful appellate review. (See *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090, 1098; *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 212–213.) If a court reporter's record is necessary but not provided, an appellant can only prevail if error is present from the face of the record presented. (*Elena S.*, at pp. 574–575; *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 93; *Nielsen*, at pp. 324–325.)

### D.    *Analysis*

The procedural posture of this case presents insurmountable hurdles to Appellant.

First, as discussed above, the May 2023 order is not a final judgment, it is one of two postjudgment appealable orders. This means that Appellant had two prior opportunities to appeal the family court's actions – through the June 2022 final judgment and the January 2023 postjudgment appealable order. These prior opportunities limit the issues that now can be appealed through the May 2023 order. (*Rifkin*, *supra*, 234 Cal.App.4th at p. 1347; *Dakota Payphone*, *supra*, 192 Cal.App.4th at p. 509; *Sole Energy*, *supra*, 128 Cal.App.4th at p. 239.)

With respect to statutory standing, the record demonstrates that Appellant first raised this issue to the family court in connection with her request to terminate visitation. In that request, Appellant presented the DNA test result and argued that Respondents are not entitled to seek visitation because they are step great-grandparents; Appellant continues to rely on the same evidence and to make the same argument in this appeal. By continuing to permit visitation, the January 2023 order shows that the court rejected Appellant's arguments. Similarly, with respect to the Fourteenth Amendment, the January 2023 order denied the requested termination and maintained the same fundamental visitation schedule against the wishes of Appellant. By refusing to

12.

terminate visitation, the January 2023 order clearly implicated the Fourteenth Amendment as explained in *Troxel v. Granville*, *supra*, 530 U.S. 57.[3]  Therefore, because the January 2023 order was a postjudgment appealable order, Appellant could have appealed the January 2023 order on both the issues of statutory standing and the Fourteenth Amendment.[4]  The fact that Appellant did not appeal the family court's rejection of her statutory standing and Fourteenth Amendment arguments at her first opportunity to do so, but instead waited to raise them through an appeal of the May 2023 order, prevents her from raising these issues in this appeal.[5]  (Code Civ. Proc., § 906; *Reyes*, *supra*, 55 Cal.App.5th at p. 67; *Rifkin*, *supra*, 234 Cal.App.4th at p. 1347; *Dakota Payphone*, *supra*, 192 Cal.App.4th at p. 509; *Maughan*, *supra*, 143 Cal.App.4th at p. 1248; *Sole Energy*, *supra*, 128 Cal.App.4th at p. 239; see also *In re G.C.* (2021) 8 Cal. 5th 1119, 1127.)

Second, and apart from the above procedural hurdle, Appellant has not provided us with a court reporter's record for any hearing, let alone the May 2023 hearing.  The Register of Actions indicates that Appellant and Respondents were sworn and likely gave

---

[3] We hasten to add, however, that *Troxel* being implicated is not the same as *Troxel* being violated.  As noted above, it is possible for visitation orders to be constitutionally imposed against the wishes of a fit parent.

[4] Unlike Appellant's arguments with respect to Respondents allegedly being "step-great-grandparents," there is no indication in the record provided that Appellant raised her Fourteenth Amendment concerns to the trial court.  The failure to raise constitutional challenges to the lower court generally forfeits the issue on appeal.  (*Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 763; see also *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143–1144.).  However, because Respondents have made procedural arguments against Appellant's appeal, but do not argue that Appellant failed raise her Fourteenth Amendment challenge to the family court, we will assume that Appellant did not forfeit the issue *by failing to raise it below*.

[5] We note that Appellant requests that we terminate Respondents' visitation rights, even though Appellant's March 23, 2023 motion and the resulting May 2023 order did not involve termination; they involved only clarification and amendment.  It is the January 2023 order that involved termination of visitation rights.  Thus, Appellant's requested relief is inconsistent with the May 2023 order and further confirms that she is appealing issues that could have been appealed before the May 2023 order.

testimony at the May 2023 hearing. Further, Appellant's briefing describes the parties' statements and arguments and the family court's statements and findings made at the May 2023 hearing. Because the findings and statements of the court are at issue, as well as the parties' representations to the court (and more likely than not their testimony too), a reporter's record of the May 2023 hearing is necessary for us to conduct a meaningful appellate review. (See *Korman v. Princess Cruise Lines, Ltd.*, *supra*, 32 Cal.App.5th at pp. 212–213; *Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at pp. 186–187.) Since no reporter's record has been provided, we presume the reporter's record would reflect a sufficient and valid basis that is free from error in support of the court's implicit determinations that Respondents have standing under Family Code section 3102 and that Appellant's Fourteenth Amendment rights were not violated. (See *Jameson*, *supra*, 5 Cal.5th at pp. 609–610; *Shenefield v. Shenefield*, *supra*, 75 Cal.App.5th at p. 633, fn. 12; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 993; *Foust*, at pp. 186–187.)

Without a reporter's record, Appellant cannot prevail unless there is error on the face of the record presented. (*Elena S. v. Kroutik*, *supra*, 247 Cal.App.4th at pp. 574–575; *Kucker v. Kucker*, *supra*, 192 Cal.App.4th at p. 93; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324–325.) Appellant's descriptions of the January 19, 2023, and May 17, 2023 hearings and the family court's statements or oral findings made at these hearings cannot be considered because these descriptions are not supported by citation to the record. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620; *County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1106, fn. 4; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1079.) This leaves only the briefing and exhibits that appear in the clerk's transcript and the augmented clerk's transcript.

With respect to statutory standing, Respondents declared that they are Anthony's grandparents. Respondents correctly point out that the DNA test results are difficult to read, and there is no supporting evidence that establishes the reliability of the results.

14.

Moreover, for the results to be meaningful, a DNA profile of Respondents is necessary so that a comparison between Anthony and Respondents can be made; Appellant's unsupported assertion of Respondents' ethnic backgrounds is without foundation and thus, inadequate. Therefore, we cannot say that Appellant's DNA evidence is so clear that it demonstrates error by the family court. We conclude that the court's implicit ruling that Respondents were the grandparents of Anthony was not erroneous on the face of the record. (Cf. *Jameson*, *supra*, 5 Cal.5th at p. 609 [describing presumptions in support of a lower court's actions]; *Arceneaux*, *supra*, 51 Cal.3d at p. 1133 [same]; *Nielsen*, *supra*, 178 Cal.App.4th at p. 321 [same].)

With respect to the Fourteenth Amendment, the parties submitted substantial and conflicting evidence as to their interactions together, statements made to third parties, their ability to properly care for A.R., and whether they are acting in A.R.'s best interest. Some of the exhibits submitted by the parties require more context and do not necessarily support a party's particular interpretation of them. The family court was required to consider and resolve these conflicts. Considering the conflict, no error by the court is apparent. Therefore, we conclude that the court's implicit ruling that Appellant's Fourteenth Amendment rights were not violated was not erroneous on the face of the record. (Cf. *Jameson*, *supra*, 5 Cal.5th at p. 609 [describing presumptions in support of a lower court's actions]; *Arceneaux*, *supra*, 51 Cal.3d at p. 1133 [same]; *Nielsen*, *supra*, 178 Cal.App.4th at p. 321 [same].)

In sum, largely due to the procedural posture of this case, Appellant has not shown error in the May 2023 order.[6]

---

[6] The relationship between Appellant and Respondents appears strained at best and hostile at worst. The parties make a variety of accusations against each other, and in turn deny those accusations. The trial court heard the accusations, received evidence and testimony, and heard the parties' arguments; it ultimately resolved all outstanding concerns in favor of continued visitation for Respondents. Without a timely appeal of the relevant orders, as well as an adequate appellate record that includes a reporter's record, the normal appellate rules and presumptions require us to affirm the court's order.

## **DISPOSITION**

The family court's May 17, 2023 order is affirmed.


POOCHIGIAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.

---

However, nothing herein prevents the parties from raising with the trial court, through an appropriate motion, any new concerns, developments, reports, or issues as they may pertain to the operative visitation order or to a party's statutory or constitutional rights.

16.