Filed 2/8/22  R.S. v. M.N. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| R.S.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>M.N.,<br><br>      Defendant and Respondent. | D078444<br><br><br>(Super. Ct. No. 18FL003487C) |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

R.S., in pro. per., for Appellant.

Law Office of Patrick McCrary and Patrick L. McCrary for Respondent.

Appellant R.S. (mother) appeals from findings and an order after hearing entered in November 2020 in which the family court, among other things, denied her request to modify custody of her and respondent father M.N.'s two minor children and ordered that she pay $4,950 in Family Code[1] section 271 sanctions.  The court ordered the sanctions in part finding mother

---

[1]      Undesignated statutory references are to the Family Code.

constantly attempted to relitigate and ask for court orders on the same issues, intending to harass father and causing unnecessary and burdensome litigation. In an opening brief with a dearth of record cites, mother contends: (1) the court abused its discretion by not considering what she claims is a history of abuse by M.N. before it made its custody determination; (2) the court erred by making a July 8, 2020 order without putting witnesses under oath; and (3) the court abused its discretion by imposing section 271 sanctions, which put an unreasonable financial burden on her. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We state the facts and background from the limited appellate record (including orders and documents with which we have augmented the record, part I, *post*), disregarding assertions that are not supported by proper record citations or are unsupported by the existing record.[2]

Mother and father have two minor children born in April 2017. In April 2018, the family court entered a judgment for parentage, custody, and visitation, awarding the parents joint legal custody and mother physical custody with specified visitation for father. Thereafter, in June, September

---

[2] Mother's briefing repeatedly makes assertions without record citation or by purporting to summarize proceedings but citing only to the register of actions. Because her brief violated the California Rules of Court, we gave mother the opportunity to file a corrected brief. Mother, however, did not limit her changes to adding proper record citations, and we ordered the appeal to proceed on her original, deficient, opening brief.

and November 2019, the family court issued findings and orders for custody, visitation and child support.[3]

In July 2020, the family court considered mother's request for an order for sole legal and physical custody of the children as well as father's opposition and request for a new parenting plan. At the hearing on the matter, mother's counsel represented that mother had agreed to father having a 33 percent and mother a 66 percent timeshare with the children. Though mother had asked the court for a section 3044 finding that an award of sole or joint custody to father would be detrimental to the children's best interests,[4] she ultimately agreed to adopt the FCS mediator's

---

[3] The November 2019 findings and order after hearing was issued following a bench trial in October 2019, where the family court, Judge Daniel Link, heard testimony from both parents concerning their relationship before and when the children were conceived. During that hearing, father testified that he supported mother as the children's mom, and mother acknowledged about father: "[H]e's a great father . . . ."

[4] Section 3044 provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).) "The presumption shifts to the perpetrator the burden of persuasion that an award of custody to him would not be detrimental to the best interests of the child. It does not establish a presumption for or against joint custody. The paramount factor for custody of the child is the child's health, safety, and welfare." (*S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 334.) To rebut the presumption the accused perpetrator must show, by a preponderance of the evidence, that joint or sole custody to him or her would not be detrimental to the child's best interest. (*Ibid.*)

recommendation for that timeshare, acknowledging a criminal investigation against father had closed without any prosecution. Mother nevertheless went ahead and complained that the children were intimidated and fearful of father, and that their conception was the result of nonconsensual sex between she and father, who were coworkers, while they were in Las Vegas. The court ordered joint and physical custody to remain the same and in part adopted the family court services recommendations. It ordered that beginning May 1, 2021, father and mother would have a 50/50 timeshare with a "two-two-three" day sharing schedule.

In August 2020, mother applied ex parte for an order to award her sole physical and legal custody of the children. She asked for a no-contact order against father, claiming father hit one child and took the children to daycare in the face of Covid-19 risks. Mother's accompanying request for order again asked for "a [section] 3044 domestic violence finding" and included other assertions about father's conduct toward her and the children. The family court denied the application, finding it did not meet the requirements of section 3064.[5] It set the matter for hearing on September 30, 2020. At some point, father asked the court to order mother to pay $6,000 in section 271 sanctions.

---

[5] In part, section 3064 provides: "(a) The court shall refrain from making an order granting or modifying a custody order on an ex parte basis unless there has been a showing of immediate harm to the child or immediate risk that the child will be removed from the State of California. [¶] (b) 'Immediate harm to the child' includes, but is not limited to, the following: [¶] (1) Having a parent who has committed acts of domestic violence, where the court determines that the acts of domestic violence are of recent origin or are a part of a demonstrated and continuing pattern of acts of domestic violence."

At the September 30, 2020 hearing the family court identified the documents it had received and considered[6] and heard the parties' arguments. Mother claimed father hit one of the children, and asked the court to award her full physical and legal custody, with father having no visitation or contact with the children. She admitted that a child welfare services investigation resulted in a finding that the claim was unsubstantiated. When father's counsel stated that mother was making the same allegations as in July 2020, mother responded that there had not been another investigation because she did not have physical evidence. The court observed that it "kind of [saw] a pattern here of you wanting to come to court constantly and get sole custody of the [children]." It asked mother about exhibits she had lodged that the court had seen before dealing with mother's allegation of rape in Las Vegas, including a text message from January 2017, which she had submitted to the court "on multiple occasions." The court asked mother what relevance the allegation had to the present proceeding:

"The court: . . . I've seen these things. I've heard from you on this issue before. It seems to me . . . that . . . you get a result that you don't like and then you come back to court a few months later. [¶] And [father] has to hire an attorney, go through the expense, miss time from work, go through the stress and strain of having to wonder what's going to happen at court. And then there's—then it's resolved. Then a few months later, we're dealing with the same issue again. [¶] . . . [¶] . . . So let me ask you. What does that

---

6    These documents were Exhibits A through H in opposition to mother's request for an order; Exhibits 1 through 16 concerning text messages and other items relating to an alleged rape incident in Las Vegas; mother's request for order; mother's August 20, 2020 declaration; father's August 21, 2020 declaration; and father's September 21, 2020 responsive declaration.

have to do with your request today to have possible sole custody of the [children]?

"[Mother]: It's a [section] 3044 request as well. So I want a domestic violence finding if Your Honor will be willing to.

"The court: You've already made that request, and it was denied.

"[Mother]: I didn't know that that request was made before. I didn't have—

"The court: You've made it multiple times. And I can tell that the speech I gave you fell on deaf ears. And you're not required to listen to my speeches, but I went through this with you last time. And nothing's changed. [¶] . . . [Father] has parental rights. And this issue with respect to the rape has already been litigated. It's done. It's passed. You're entitled to your view of what happened when the [children] were conceived. The father is also entitled to his. [¶] But what remains is the [children.] . . . I don't know why I'm doing a speech again. . . . [I]f you want to do what's best for the [children], you're going to stop exposing them to all the anger you have to the father."

The court denied mother's request to modify custody, finding there had been no material change in circumstance since the last hearing and ordering the previous orders to remain in effect. The court then considered father's request for section 271 sanctions. Father's counsel argued mother had shown a pattern of violating the court's orders and filing motions or ex parte requests that were "res judicata." He asserted that the judge who made the initial custody order and the present family court judge had both urged mother to "move past the situation" and successfully coparent. Father's counsel asked the court to tell mother that a possible consequence of violations and bad behavior was the loss of custody. In response to the

6

court's questions, father's counsel stated he had spent about 18 hours at his $275 per hour billing rate on the matter. The court allowed mother to respond, and she asserted that she was not fabricating the situation, that her children were crying and not excited to see father, and she was trying to speak on their behalf.

The court made further orders about exchanges and the parents' communications through a parenting communication service. It found that mother "repeatedly brings the same motion and files the same exhibits and wants to relitigate over and over again the alleged rape that happened in Las Vegas in 2017. And every time she does that, [father] has to come back here to court and hire an attorney and be subjected to the litigation."

The court continued: "We were just here in July. And there's been no change of circumstance, but the mother is repeatedly asking this Court to do the same thing over and over and over again, and without any legal basis. The mother is engaging in conduct with the discernible intent to harass the father. It's clear that she has bad blood with the father and she's advancing positions that are not reasonably supported by law or fact, and she's conducting unnecessary and burdensome litigation, which is not only causing the father to take time from work, but it's requiring the father to hire an attorney and defend against these repeated allegations that keep coming up time and time again. [¶] There is no legal basis for the mother to request full legal [or] full physical custody of the [children]. None whatsoever. Yet she comes to court, files the ex parte, files the [request for order]. I short-set it. There's been no credible evidence that would suggest in any way, shape, or form that the father should be prohibited from seeing those [children]. [¶] The father has equal parental rights to those children . . . . Your parental rights do not trump the rights of the father. Your rights are exactly the

same. And when you come to court time and time again and try and trample on his parental rights with no legal basis and no factual basis, [section] 271 sanctions are appropriate. [¶] So the next question then is the sanctioned party must be reasonably likely to have the ability to pay considering the party's income, assets, and liabilities. [¶] I again looked through the income and expense declaration. The Court finds that the mother does make $5,460 a month. I don't typically like to impose these sanctions, but if I don't, it's a sanction against [father] because he's having to pay $4,950 to his attorney to respond to allegations; they're not supported by the law and not supported by the facts. [¶] So the Court does find that the mother does have the ability to pay and will award [section] 271 sanctions in the amount of $4,950. The Court will order that amount to be paid in the amount of $200 a month until paid in full."

The court then admonished mother on section 3040, providing that a court granting custody " 'shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent.' " The court stated: "You've made it crystal clear . . . that you have no intention whatsoever of fostering a relationship between the [children] and the father. I do not think that you would—I'm not making any findings right now, but if you keep up this behavior, we're coming to court trying to take the kids away from the father when it's not substantiated by the law or the facts, that could lead the Court to a finding that you are not more likely to allow the children frequent and continuing contact with the father. And that would be the factor that the Court will consider in awarding custody. [¶] And a situation like this could result in the father having full physical custody of the children and not you, because I think the father would be more likely to share custodial times with the [children]. I think the father

8

recognizes the fact[] that the children need to have a nurturing relationship with the mother. You fail to recognize that on behalf of the father. [¶] So you keep coming to court like this with baseless motions that aren't supported by the law or facts, [section] 3040 will kick in at some point. It's not now, but at some point it might. You might want to write it down—Family Code section 3040—and take a look at that. I don't think you're listening to a word I'm saying, and I'll probably have this speech with you next time you come to court, but I just thought I would let you know what the status of the law is."

The trial court issued its findings and order after hearing on November 2, 2020. That order denied mother's request to modify custody. It confirmed the existing custody orders, specified the place of exchanges and method of communication, and found mother constantly sought to relitigate issues such that it was appropriate that she pay sanctions. The court ruled mother had the ability to pay sanctions and ordered her to pay father $4,950, payable at $200 per month beginning November 1, 2020. It admonished mother to "not continue filing baseless motions" and that section 3040 "may be applied in future to limit Mother's custodial time if Mother continues to engage in meritless litigation."

## DISCUSSION

### I. *Mother's Motions to Augment the Record*

Mother made two motions to augment the appellate record, which we ordered considered with this appeal. In both, she asks us to include documents that she did not designate for the clerk's transcript, stating they are "required to show relevant records in support of the appeal and to properly cite to the records on appeal." Father does not oppose either request.

9

We deny mother's August 5, 2021 motion, which asks to augment the record with a July 31, 2020 findings and order after a hearing held on July 8, 2020, and the page of the register of actions reflecting that document. The register of actions is already part of the record on this appeal, rendering judicial notice unnecessary. (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 418.) As for the July 31, 2020 findings and order after hearing, though mother asserts the order is relevant, she does not explain why it is relevant to the issues in this appeal. We could deny the motion on that ground (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 696, fn. 4) but we exercise our discretion to augment the record with the family court's past findings and orders strictly to give procedural context to mother's arguments on appeal.

Mother's July 29, 2021 motion asks us to augment the appellate record with numerous documents filed in the family court.[7] For the same reason, we grant in part mother's request. We deny it as to the parties' declarations and motion papers filed and submitted to the court in connection with prior

---

[7]    Specifically, mother asks us to augment the record with a judgment entered on April 12, 2018; the first page of a May 17, 2019 family court services recommendation for a parenting plan; mother's May 24, 2019 responsive declaration and lodged exhibits; minutes of a June 10, 2019 hearing; June 17, 2019 findings and order after hearing for custody, visitation and child support; September 16, 2019 findings and order after hearing for child support; father's September 25, 2019 declaration; mother's October 2, 2019 declaration; mother's notice of lodgment of exhibits 1-4 and 9 received October 2, 2019; November 26, 2019 findings and order after hearing; mother's memorandum of points and authorities filed February 26, 2020; the first page of a June 22, 2020 family court services parenting plan recommendation; father's June 25, 2020 responsive declaration to mother's request for order; amended minutes from the July 8, 2020 hearing; mother's income and expense declaration filed on August 20, 2020; mother's notice of intent to lodge exhibits 1-16 received September 16, 2020; and father's September 11, 2020 responsive declaration to mother's request for order.

custody and visitation hearings that are not at issue in this appeal.  We grant the request as to the family court's prior judgments or findings and orders after hearing, again strictly for procedural context and not for review of those judgments, findings and orders.  We grant the request with respect to papers that were before the court for purposes of the September 30, 2020 hearing at issue in this appeal.

    II.  *The Scope of This Appeal and Principles of Appellate Review*

Mother's notice of appeal, filed October 29, 2020, states she is appealing a judgment after a court trial, and mother attaches the minutes from the September 30, 2020 hearing.  Because the notice of appeal was filed before the court issued its November 2, 2020 findings and order after hearing, at our request mother later submitted the November 2020 family court order.  We construed her premature notice of appeal as taken from that order, and it is timely as to it.  (Code Civ. Proc., § 904.1, subd. (a)(7); Cal. Rules of Court, rule 8.104(a)(1).)

But mother discusses earlier proceedings (including custody mediation) and orders throughout her briefing and purports to challenge matters stemming from them.  Those matters are not properly before us.  Our appellate jurisdiction is " 'limited in scope to the notice of appeal.' " (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 846.)  We will not liberally construe notices of appeal in favor of their sufficiency (Cal. Rules of Court, rule 8.100(a)(2)) as to unspecified orders.  (*In re J.F.* (2019) 39 Cal.App.5th 70, 76; *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225-226; *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173.)  Such appeals would be untimely in any event, requiring us to dismiss them on our own motion.  (See *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.)

11

Mother's deficient briefing in this court (see footnote 2, *ante*) also compels us to emphasize settled principles of appellate review. "[A]s a party appearing in propria persona, [mother] 'is entitled to the same, but no greater, consideration than other litigants and attorneys. [Citations.] Accordingly, we may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record." (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) We disregard conclusory arguments. (*Ibid.*) Mother must provide cogent legal argument in support of her claims of error with citation to legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C); *Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1081.) Absent these required matters, the point is forfeited. (*Sims*, at p. 1081; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

On appeal, a judgment or an order is presumed to be correct, and mother as the party challenging the order must affirmatively show error. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We presume judicial duty is properly performed; that the court below knows and applies the correct statutory and case law, and will ignore material it knows is incompetent, irrelevant, or inadmissible. (*S.Y. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 333; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.)

Mother's failure to properly cite to the appellate record would permit us to affirm the court's November 2020 order under the foregoing principles. However, because we have elected to augment the record with documents that were before the trial court when it made that ruling, we will consider

mother's challenge to that order to the extent she accompanies her arguments with pertinent authority and legal reasoning.

III. *Mother's Challenge to Custody Orders and Family Court's Asserted Failure to Consider the "History of Abuse"*

Mother contends the family court erred by failing to consider her abuse allegations against father before making its custody determination. Mother's challenge is directed at "any of the four custody hearings" and all "[t]he judges in these proceedings" including the family court judge presiding over the matter in 2019 when the parties underwent custody mediation. Specifically, she contends the family court erred by not informing her of section 3044 before the parties attended custody mediation; the court abused its discretion in awarding joint legal and physical custody to father and did not consider the children's best interests when she brought allegations of abuse, sexual assault and domestic violence to the court's attention; the court erred by stating mother was relitigating the rape and imposing sanctions upon her as a result, and by granting custody without making findings; and the evidence supports a finding of domestic violence under section 3044. She asserts father "has never provided any evidence to prove the [children's] conception was consensual because there is none" and that text messages between them show father's knowledge that he had forced himself upon her. Mother asks this court to "remand to the trial court to make a finding of domestic violence for [father] sexually assaulting [mother] on July 31, 2016, within the past 5 years under [section] 3044[, subdivision (a)] . . . ."

As we have explained, we do not consider family court findings and orders that are not at issue in this appeal, which involves only the September 2020 hearing and the family court's November 2020 findings and order after

13

hearing.[8] The only matters before the family court at the time were mother's request to modify custody and father's request for section 271 sanctions. This was not the court's initial custody determination: the family court had in the April 2018 judgment determined that joint custody was in the children's best interests. (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32 [family court in initial custody determination has " 'widest discretion' " to choose a parenting plan that is in the best interests of the children]; *Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 902 [same].) But it is not clear from the record whether the court's July 2020 custody order prior to the September 2020 hearing was intended to constitute a final and permanent

---

[8]     This eliminates from our consideration mother's argument that the family court should have informed her of section 3044, which requires a court to "inform the parties of the existence of this section and . . . give them a copy . . . prior to custody mediation in the case." (§ 3044, subd. (h).) Mother admits the custody mediation was held in April 2019.

custody determination.[9] Such a final order would trigger the "changed circumstance rule," under which "custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest." (*In re Marriage of Brown and Yana* (2006) 37 Cal.4th 947, 956.) That test protects the weighty interest in stable custody arrangements and fosters judicial economy. (*Ibid.*) Mother has provided no meaningful analysis or discussion on the question of what standard applies to the court's September 2020 order. We need not decide which is the correct standard, as we explain mother has not demonstrated that the family court erred under either the best interests or changed circumstances standard.

We review the family court's custody and visitation orders, including a request to modify custody, for abuse of discretion. (*Montenegro v. Diaz*, *supra*, 26 Cal.4th at p. 255; *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p.

---

9       At the October 2019 hearing, the family court acknowledged that the prior custody orders in place were temporary orders. The court's November 2019 findings and order after hearing stated: "This custody order is a non-Montenegro [*Montenegro v. Diaz* (2001) 26 Cal.4th 249] order," indicating the November 2019 order was likewise a non-final, temporary custody order. At the July 2020 hearing on mother's request for change of custody, the court after hearing the parties' testimony awarded joint legal custody to both parents: "[L]et me just make it clear. You both shall share joint legal custody, which means you share the right and responsibility to make decisions related to the health, education, and welfare of the children." In September 2020, the family court again considered the parties' testimony, and found "there's been no material change in circumstances since the last hearing when the Court imposed the orders." The minute order following that hearing states: "The Court finds there has not been a material change of circumstances." However, that language does not appear in the court's November 2, 2020 findings and order after hearing. There, the court stated it "considered [s]ection 3011 and the best interests of the child" [*sic*] in denying mother's request to modify custody.

51; *S.Y. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 333.) " 'Under this test, we must uphold the trial court "ruling if it is correct on any basis, regardless of whether such basis was actually invoked." ' [Citation.] Generally, reversal is only warranted 'if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child.' [Citation.] ' " 'Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that [it] did.' . . . " ' " ' " (*Ed H. v. Ashley C.* (2017) 14 Cal.App.5th 899, 904; see also *S.Y. v. Superior Court*, at p. 333.) " 'An abuse of discretion occurs when the trial court exceeds the bounds of reason; even if we disagree with the trial court's determination, we uphold the determination so long as it is reasonable.' " (*S.Y.*, at p. 333.) " 'We do not reverse [an exercise of discretion in establishing child custody and visitation] unless a trial court's determination is arbitrary, capricious, or patently absurd.' " (*Id.* at p. 334.) We review the court's factual findings for substantial evidence, in the light most favorable to the judgment. (*Ibid.*) " ' " 'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony.' " ' " (*Ibid.*)

By her arguments, mother has not demonstrated an abuse of discretion in the court's custody ruling. As to the points she makes, many are forfeited for making factual assertions without supporting record citations, or making factual assertions not supported by the record she does cite. (Cal. Rules of Court, rule 8.204(a)(1)(C) [an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) We may " 'decline to consider passages

16

of a brief that do not comply with this rule.' " (*Sciaratta v. U.S. Bank N.A.* (2016) 247 Cal.App.4th 552, 556, fn. 1.) To the extent mother seeks review of factual matters, she fails to discuss or apply the relevant substantial evidence standard of review. Even if mother had acknowledged that standard, she violated it and forfeited her claims by stating facts only favorable to her. (See *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 ["[a] party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable"; because plaintiff did not meet those obligations, issue was deemed waived].)

Mother's claims concerning section 3011 and the domestic violence rebuttable presumption under section 3044 are unavailing. As father points out, mother had an opportunity to raise the domestic violence presumption in July 2020, but her counsel advised the court that given the closure of the criminal investigation concerning father, mother would not pursue that finding but had agreed to the family court services custody recommendation. Under the circumstances, mother either forfeited or invited her claim of error as to the custody order that was the subject of mother's September 2020 modification request. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [party who induces the commission of error is estopped from asserting it as a ground for reversal on appeal].) As for section 3011, that provision applies only to a determination of children's bests interests in "a proceeding described in Section 3021," which mother does not explain or address. We will not make arguments for her, and her bare arguments do not establish error. (*Perry v. City of San Diego* (2021) 65 Cal.App.5th 172, 188, fn. 8; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15 [" ' "We are not bound to develop appellants' arguments for them" ' "].)

17

With regard to mother's arguments concerning section 3044, the rebuttable presumption described in that section is triggered "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . ." (§ 3044, subd. (a); see *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661.) The family court considering mother's modification request observed there was no such domestic violence court finding, and declined to consider mother's renewed request, pointing out it had been litigated. Mother asserts this is not the case, but the record is to the contrary. During their October 2019 hearing to set custody and visitation, the family court permitted mother to question father under oath about their relationship and the evening in question from 2016. As the family court acknowledged, the parties presented conflicting accounts of the matter.[10] The family court observed their relationship did not have "exactly the perfect start" such that it "wasn't conducive to equal co-parenting and great feelings on both sides." It summarized that the situation had "a lot of different variables"; when father got a new girlfriend, issues arose between father and mother, prompting father to come to the court for more parenting time. The court said: "That's where we are. I get the past and I get that you want to tell the story. . . . And I get that there's a lot of gray areas that this Court is not going to be making any decisions on as far as sexual assault. But I appreciate you have a story to tell."

---

10    The court said it had read the parties' papers and summarized: "You believe you were sexually assaulted in Vegas. He said it was consensual. I also know that there . . . was consensual sex multiple times after the kids were born. That's what I know. [¶] I think relitigating whether this is a sexual assault or not is going to be a very difficult prospect. There wasn't a conviction. There wasn't an arrest. There wasn't a report. But I will allow you to explore it briefly."

18

Mother's deficient briefing does not cite to substantial evidence in the record establishing any new conduct on father's behalf that would trigger the section 3044 presumption or explain why, under the substantial evidence standard of review, father could not have rebutted the presumption that his custody would be detrimental to the children's best interests. (See *S.Y. v. Superior Court*, *supra*, 29 Cal.App.5th at pp. 336-337.) Mother does not point to substantial evidence that father's legal and physical custody put the children at risk for their safety and welfare. (Accord, *ibid.*) On this record, having no showing of error or prejudice, we affirm the family court's ruling that mother's showing did not warrant modifying custody.

IV. *Claim of Unsworn Witnesses at July 8, 2020 Hearing*

Mother contends the family court erred when it did not place any party under oath at the July 8, 2020 hearing. She asks that the order should be reversed because it was based on presumably "untruthful" testimonies. As stated, we dismissed mother's untimely appeal from the ensuing July 31, 2020 findings and order after the July 8, 2020 hearing. We are without jurisdiction to consider the claim relating to this order. (*Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 ["[O]nce the deadline [for filing a timely notice of appeal] expires, the appellate court has no power to entertain the appeal"]; *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 670 ["the timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction"]; *Adoption of Reed H.* (2016) 3 Cal.App.5th 76, 82.)

V. *Section 271 Sanctions*

Mother contends the court abused its discretion when it ordered her to pay section 271 sanctions, which assertedly caused her an unreasonable

19

financial burden. She makes a number of subsidiary arguments that are not reflected in her heading, namely that the court should have considered her self-represented status and inability to pay an attorney; abused its discretion by setting the matter for a hearing and modifying custody without a showing of immediate harm under section 3064; erred by failing to consider her assets and liabilities before making its order; and was biased against her.

None of these arguments meaningfully challenge the substantive basis for awarding section 271 sanctions, or the amount of the court's award. " 'Section 271, subdivision (a) authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' and 'does not require any actual injury.' [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) Further, "a sanctions award under section 271 need not 'be limited to the cost to the other side resulting from the bad conduct.' " (*Id.* at p. 1226.) "[S]ection 271 is not a need-based statute and does not require a correlation between the sanctioned conduct and specific attorney fees . . . ." (*Ibid.*) A court therefore need not delineate how a sanctions amount is related to the fees and costs incurred by the party seeking sanctions. We presume the court properly applied these principles in its order, and mother's arguments do not rebut that presumption. We review her arguments in any event.

A. *Mother's Self-Represented Status*

Mother suggests that the family court erred by not considering the fact she was a self-represented litigant. She recognizes that her status as a self-represented litigant is not grounds for lenient treatment. However, citing *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276 and *Petrosyan v. Prince*

*Corp.* (2013) 223 Cal.App.4th 587, she argues courts should not be "wholly indifferent" to a litigant's lack of legal training, but must acknowledge they do not have an attorney's level of knowledge and may misunderstand requirements.

*Gamet v. Blanchard* and *Petrosyan v. Prince Corp* stand for the proposition that a court in a situation involving both represented and unrepresented litigants would be well advised to ensure its communications are clear and understandable to the unrepresented litigant. (*Gamet v. Blanchard*, *supra*, 91 Cal.App.4th at p. 1285 [self-represented litigant "received information that was plainly inaccurate" and was confused by a judgment dismissing her complaint, which continued to list a law firm as counsel even though it had been relieved as counsel]; *Petrosyan v. Prince Corp.*, *supra*, 223 Cal.App.4th at p. 594 [involving in limine orders and a non-native-English-speaking self-represented litigant].) But mother does not suggest she did not understand the court's communications and orders, nor does she explain how the principle applies to the court's sanctions order. Rather, she goes on to argue that the court should have considered the financial hardship she experienced from being the primary custodial parent to her children. She maintains she has not received required financial support, making her operate on an "uneven playing field" and she should be awarded "the full amount of backpay" to allow her to retain counsel so as to "prohibit baseless and meritless litigation which caused the judge to impose [the section 271 sanctions]."

These arguments do not make out a claim of prejudicial error. As we hold below, we presume the court properly considered mother's financial circumstances in making its sanctions order and mother does not rebut that presumption. Mother did not raise her backpay arguments below and they

21

are forfeited as a result. (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958; *Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.) Her arguments alternatively challenge prior child support orders that she did not appeal. In short, mother's arguments concerning her self-represented status do not establish error.

B. *September 2020 Hearing Date*

Mother contends the court erred by setting her matter for a hearing in September 2020 and misapplying the requirements of section 3064, which prohibits the court from modifying custody on an ex parte basis without a showing of immediate harm (see footnote 5, *ante*). She complains that despite section 3064, the court modified the custody order to change the parties' exchange location, prohibit mother from appearing at the children's daycare location past 3:00 p.m., and have her pay sanctions. She argues the modification order "was not based on any showing of immediate harm or risk to the [children]."

Mother did not object and raise this point below when the family court made its ruling, and it is forfeited. (*In re A.C.* (2017) 13 Cal.App.5th 661, 671 [appellate court will not consider procedural defects where an objection could have been but was not presented to the lower court by some appropriate method], quoting *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.)

C. *Consideration of Assets and Liabilities*

Mother contends the family court erred when it based its sanctions order on her income only, and not on her liabilities of $7,022. According to her, she was "sanctioned under false pretenses by [father]" and the sanction posed an unreasonable financial hardship because she could not afford to pay costs of healthcare, food and rent.

22

Any order that requires a party to pay attorney fees under the Family Code requires the court to "first determine that the party has or is reasonably likely to have the ability to pay." (§ 270.) Section 271 requires the court to "take into consideration all evidence concerning the parties' incomes, assets, and liabilities" and prohibits the court from making an award "that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).) We review an award of attorney fees under section 271 for abuse of discretion and review any findings of fact made in connection with the award under the substantial evidence standard. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.)

Mother's arguments do not apply the relevant standard of review, thus we may affirm the court's sanctions order on the ground she has not met her appellate burden to establish the court abused its discretion or made unsupported factual findings. We would affirm in any event. The family court acknowledged on the record that it was required to examine whether mother was reasonably likely to have the ability to pay given her "income, assets, and liabilities," and that it had "looked through [her] income and expense declaration." That the court did not recite mother's liabilities on the record does not establish an abuse of discretion, as "[a] trial court is not required to issue a statement of decision for an attorney fee award." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 981; accord *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [order on sanctions need not be made in writing].) On this record, mother has not rebutted the presumption that the family court properly performed its judicial function and complied with its obligation to consider her financial circumstances so as to assess whether sanctions would impose an unreasonable financial burden.

D. *Claim of Bias*

Mother contends the family court was biased against her and made a "false statement" about her based on false evidence from father when it found she had exposed the children to her anger for father and engaged in conduct designed to harass him. She criticizes the family court for admonishing her that she could lose custody if she did not follow the custody orders and observing that father would be more likely to share custody, arguing the latter statement was prejudicial to her and lacked factual evidence. She argues father sought sanctions against her "to silence[ ] and penalize [her] for coming forward about the rape."

Mother's assertions—which are made without meaningfully applying the relevant standard of review or reasoned legal argument—ask us to reweigh credibility of the underlying evidence presented to the family court, which we will not do. (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 824 ["It is not our role to interfere with the trial court's assessment of the witnesses' demeanor and credibility"].) We deem her points forfeited. (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255 [absence of cogent legal argument or citation to authority allows appellate court to treat the contention as forfeited].) Otherwise, mother's arguments do not make a serious demonstration of judicial bias. Adverse rulings—even when erroneous—do not establish judicial bias. (*People v. Navarro* (2021) 12 Cal.5th 285, 332; see also *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674; *People v. Guerra* (2006) 37 Cal.4th 1067, 1112.) "Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias." (*Guerra,* at p. 1111.)

24

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


DO, J.